IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| ROBERT LEE DANDRIDGE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 3:21-cv-735–HEH |
| ) | |
| MIDDLE PENINSULA REGIONAL ) | |
| SECURITY CENTER, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**
**(Granting Defendants' Motion for Summary Judgment)**

Plaintiff Robert Lee Dandridge ("Plaintiff") filed a Motion for leave to Proceed *in forma pauperis* on November 22, 2021. (ECF No. 1.) The Court granted the motion on January 11, 2022 (ECF No. 2), and Plaintiff's Complaint was filed that same day (ECF No. 3). In his Complaint, Plaintiff alleges that, while he was an indigent defendant incarcerated at Middle Peninsula Regional Security Center ("MPRS"), Defendants violated his Eighth and Fourteenth Amendment rights by not providing him hygiene products or underclothing free of charge. (Compl. at 4–12, ECF No. 1.)

Currently before the Court is MPRS, Superintendent Timothy Doss ("Superintendent Doss"), and Lieutenant Rudolph Williams's ("Lt. Williams") (collectively, "Defendants") Motion for Summary Judgment (the "Motion"), filed on March 9, 2022 (ECF No. 10). Defendants properly served Plaintiff with notice of his right to file a response to the Motion pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th

Cir. 1975), and Plaintiff failed to file any timely response. For the reasons stated below, the Court will grant Defendants' Motion.

## I. STANDARD OF REVIEW

Pursuant to Rule 56, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine factual dispute exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986).

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48. A material fact is one that might affect the outcome of a party's case. *Id.* at 248; *Hogan v. Beaumont*, 779 Fed. App'x 164, 166 (4th Cir. 2019). A genuine issue concerning a material fact only arises when the evidence, viewed in the light most favorable to the nonmoving party, is sufficient to allow a reasonable trier of fact to return a verdict in the party's favor. *Anderson*, 477 U.S. at 248.

The existence of a mere scintilla of evidence in support of the nonmoving party as well as conclusory allegations or denials, without more, are insufficient to withstand a

2

summary judgment motion. *Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020). Accordingly, to deny a motion for summary judgment, "[t]he disputed facts must be material to an issue necessary for the proper resolution of the case, and the quality and quantity of the evidence offered to create a question of fact must be adequate." *Thompson Everett, Inc. v. Nat'l Cable Advert.*, 57 F.3d 1317, 1323 (4th Cir. 1995) (citing *Anderson*, 477 U.S. at 252).

## II. BACKGROUND

Applying this standard, the relevant facts are as follows. Plaintiff was an inmate at MPRS from August 7, 2018 to December 16, 2020. (Compl. at 4; Doss Decl. ¶ 3, ECF No, 11-1.) When an inmate first arrives at MPRS, they are issued, among other things, a hygiene pack and a jail uniform, free of charge. (Jail Prop. Receipt at 1, ECF No. 11-3.) The hygiene pack includes basic hygiene items like soap, toothpaste and a toothbrush, shampoo, and deodorant. (*Id.* ¶ 2.) Plaintiff received both an initial, free hygiene pack and a jail uniform when he was booked on August 7, 2018. (*Id.*) If an inmate needs additional hygiene products, they may purchase them at the commissary. (Comm. List, ECF No. 11-7.) If they are considered indigent, they can request hygiene items using the "Indigent Request" form but their accounts will be charged. (Indigent Request Form, ECF No. 11-5.)

As for undergarments, the policy at MPRS requires that all undergarments be solid white so as to lessen the potential for contraband. (Doss Decl. ¶ 7.) Thus, unless the inmate arrived at the facility wearing approved white undergarments, the only way he can get them is to purchase them from the commissary himself or have friends or family

3

purchase them on the MPRS website. (*Id.*) However, some inmates choose not to wear underclothing at all. (*Id.*) At the time of Plaintiff's incarceration, only trustee inmates were issued additional clothing, including underclothing, free of charge. (Williams Decl. ¶¶ 3, 4.) A trustee is an inmate who is considered low or minimum security risk to the jail and, thus, are given opportunities to work both inside and outside the jail. (*Id.* ¶ 4.) Often, they work in food services where they are expected to maintain higher standards of personal hygiene. (*Id.*) They also work outside and, when they do, they are issued underwear, blue jeans, and shirts so that they are more presentable to the public eye and can withstand harsher weather conditions. (*Id.*) Plaintiff was not a trustee inmate.

On April 20, 2020, Plaintiff filed a grievance with the jail complaining about the charges on his account. (Doss Decl. ¶ 8.) Major Bristow responded and informed Plaintiff about the policy of charging indigent inmates for certain products. (*Id.*) Plaintiff appealed the grievance to Superintendent Doss, and it was denied. (*Id.*) Plaintiff filed another grievance about the charging policy on November 18, 2020. (Second Grievance, ECF No. 3-1 at 4.) He also complained about not being issued underwear and stated that he was experiencing irritation in his genitalia because he did not have underclothing. (*Id.* at 5.) This was the first time Superintendent Doss heard about Plaintiff's underclothing complaint. (Doss Decl. ¶ 9.) Plaintiff also filled out a request form asking to be put on the doctor's list because of the irritation. (ECF No. 11-14 at 1.) He saw a doctor who gave him antifungal cream, and Plaintiff stated it "clear[ed] up the fungal infection." (*Id.* at 2.) Lt. Williams gave him a pair of underwear after his visit to the doctor on November 24, 2020. (ECF No. 3-1 at 11.)

4

On December 3, 2020, Major Bristow responded to Plaintiff's November grievance and, again, explained the policy about hygiene products and underclothing. (Resp. to Griev. at 1, ECF No. 11-16.) Plaintiff also told Major Bristow that he had two pairs of underwear, but that one pair was borrowed from another inmate and he had to return it. (*Id.* at 1–2.) Additionally, Major Bristow gave Plaintiff two pairs of boxer shorts at no cost. (*Id.* at 2.) Despite this, Plaintiff appealed the grievance to Superintendent Doss. (Doss Decl. ¶ 10.) In response, Superintendent Doss changed the policy so that inmates would receive soap free of charge and inmates who could not afford underclothing could request and receive the underclothing free of cost. (Mem. to Inmate Pop., ECF No. 11-10.)

## III. DISCUSSION

Plaintiff brings this Complaint under 42 U.S.C. § 1983 and alleges that his Eighth and Fourteenth Amendment rights were violated by the hygiene and underclothing policies at MPRS. Defendants argue that all parties are immune from suit based on qualified immunity and, even if they were not, Defendants did not violate Plaintiff's Eighth or Fourteenth Amendment rights. Consequently, Defendants urge, there is no genuine issue of material fact and summary judgment should be granted in their favor.

First, as it relates to MPRS, Defendants argue that regional jails are not subject to suit under § 1983. A claim under § 1983 alleges "a deprivation of a right secured by the Constitution or other law of the United States by a *person* acting under color of state law." *McCoy v. Chesapeake Corr. Ctr.*, 788 F. Supp. 890, 891 (E.D. Va. 1992) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70 (1989)) (emphasis in original). In

5

*Will*, the United States Supreme Court found that the "State nor its officials acting in their official capacities are 'persons' under § 1983." 491 U.S. at 71. This notion has since been extended to apply to local jails in Virginia because "the level of state involvement in the regulation and administration of local jails in Virginia indicates that the local jails are arms of the state for Eleventh Amendment purposes." *McCoy*, 788 F. Supp. at 892. For example, Virginia local jails receive significant funding from the state to insure their employees against wrongful action law suits, the State Board of Corrections sets minimum standards for construction of the local jails, and the jails are operated by the Sheriff who is a state official. *Id.* at 892–93. As a result of this significant state involvement and regulation, local jails in Virginia are not "persons" under § 1983. *Id.*

In Virginia, a jail is considered local if it is maintained, owned, or operated by a political sub-division. *McCoy*, 788 F. Supp. at 892 (quoting Va. Code Ann. § 53.1-1). MPRS is a local jail and, therefore, is not a "person" under § 1983. *Id.*; *see Preval v. Reno*, No. 99-6950, 2000 WL 20591, at 1* (4th Cir. Jan. 13, 2000) (finding Piedmont Regional Jail was not a "person" under § 1983). The Motion for Summary Judgment will be granted as to MPRS.

Defendants also argue that Superintendent Doss and Lt. Williams are entitled to qualified immunity. "[G]overnment officials performing discretionary functions generally are granted qualified immunity and are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The

6

first step in a qualified immunity analysis is to determine whether a plaintiff has alleged a deprivation of a statutory or constitutional right and, if they have, whether that right was clearly established at the time of the violation. *Conn v. Gabbert*, 526 U.S. 286, 290 (1999). As discussed below, neither Superintendent Doss nor Lt. Williams violated any of Plaintiff's constitutional rights, let alone a right that was clearly established at the time of the alleged violation.

Plaintiff claims that Defendants violated his Eighth Amendment rights. (Compl. at 12.) The way a prisoner is treated, and his conditions of confinement are subject to Eighth Amendment scrutiny. *Helling v. McKinney*, 509 U.S. 25, 31 (1993). The Eighth Amendment prohibits "cruel and unusual punishment" and imposes duties on prison officials to provide humane conditions within their facilities. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). That being said, neither the Eighth Amendment, nor any other constitutional provision requires that prisons be totally comfortable. *Id.* at 832. To state an Eighth Amendment claim in the prison context, a plaintiff must meet two requirements: (1) the alleged deprivation "must be, objectively, 'sufficiently serious;'" and (2) the prison officials' state of mind was one of "'deliberate indifference' to inmate health or safety." *Id.* at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298, 302–03 (1991)).

For the first requirement, Plaintiff must show he is incarcerated "under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834; *Gray v. V.B.C.C. Inmate Housing*, No. 1:14cv414, 2014 WL 3420483, at *2 (E.D. Va. July 9, 2014). In this case, Plaintiff takes issue with the underclothing policy, the fact that basic hygiene

7

items are not available to indigent inmates free of charge, and that uniforms are only washed once a week.[1] (Compl. at 2–3.) Plaintiff alleges that, as a result of these policies, he sustained a fungal infection and irritation to his genital area. (ECF No. 11-14.)

These policies do not constitute "extreme deprivation" nor do they deny Plaintiff a life necessity. At no time was Plaintiff denied access to any of these items. He could purchase the items from the commissary or, in regard to the hygiene items, he could request them and the cost would be charged to his account. (Comm. List; Indigent Request Form.) In fact, although he was charged for the items, Plaintiff regularly received hygiene items. (Resident Debt at 2–30, ECF No. 11-6.) As for underwear, after Plaintiff went to the doctor for his genital irritation, Lt. Williams gave him a pair of boxers free of charge. (ECF No. 3-1 at 11.) Additionally, Plaintiff told Captain Bristow he had two pairs of underwear and Captain Bristow also gave him two more pairs. (Resp. to Grievance at 2.) Thus, the record reveals that Plaintiff was not completely deprived of underwear or hygiene items.

Even if Plaintiff was deprived of these items at times, it is not an *extreme* deprivation, and other Courts have found that underwear is not a life necessity. *Gregory v. Stolle*, No. 3:13cv64, 2015 WL 1506073, at *4 (E.D. Va. Mar. 31, 2015); *Burnett v. Kansas*, 485 F. App'x 288, 289 (10th Cir. 2012); *Chambers v. Simonet*, No. 94-1566, 1995 WL 330903, at *1 (10th Cir. May 25, 1995). Further, charging an inmate for

---

[1] Plaintiff does not seem to discuss the laundry policy as an independent violation of the Eighth Amendment but uses it to provide context and amplify his argument that the hygiene policies in general were a violation. (Compl. at 6.)

8

products from the commissary is not cruel or unusual punishment. It is a tool used by the jails to "defray the costs associated with prisoners' keep." Va. Code Ann. § 53.1-131.3 (allowing jails to establish programs charging inmates daily fees).

Regarding the second requirement, Defendants were not deliberately indifferent to Plaintiff's needs. *See Farmer*, 511 U.S. at 834. In fact, when any of the Defendants were made aware of Plaintiff's lack of underclothing, they tried to help him obtain it. (Resp. to Grievance at 1–2; Lt. Williams Decl. at 1, ECF No. 11-11; Doss Decl. at 1–2.) When Plaintiff appealed his second grievance to Superintendent Doss, it was the first time Superintendent Doss heard Plaintiff complain about his lack of underwear and medical issues related to it. (Doss Decl. at 3.) In response, Superintendent Doss changed the policy for the entire inmate population and stated that, effective immediately, inmates could request underclothing on the inmate request form and obtain them free of charge. (*Id.*; Mem. to Inmate Pop.) This demonstrates that Defendants were not deliberately indifferent to Plaintiff's needs and, in fact, made efforts to address them. Thus, Defendants did not violate Plaintiff's Eighth Amendment rights.

Plaintiff next alleges a violation of the Fourteenth Amendment. (Compl. at 12.) However, it is unclear exactly which of Defendants' actions Plaintiff believes violated his Fourteenth Amendment rights. Defendants postulate that it could be an Equal Protection claim because trustee inmates are provided with underclothing for free when Plaintiff was not. (Defs.' Mem. Supp. at 11.) Alternatively, Defendants suggest that Plaintiff could be

9

alleging a violation of the Due Process Clause of the Fourteenth Amendment to be free from punishment as a pretrial detainee.[2]

The Equal Protection Clause of the Fourteenth Amendment states that "no State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. This means the government may not treat persons differently "who are in all relevant respects alike." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992); *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002). Thus, to state an Equal Protection claim, a plaintiff must allege sufficient facts to show that he was treated differently from other similarly situated individuals and that the "unequal treatment was the result of intentional or purposeful discrimination." *Fauconier v. Clarke*, 966 F.3d 265, 277 (4th Cir. 2020).

This, however, is not the end of the analysis. A plaintiff must then show that any disparity "was not justified under the appropriate level of scrutiny." *Id.* In the prison context, running a prison is considered extremely difficult and requires specific expertise in preparedness and allocating resources. *Turner v. Safley*, 482 U.S. 78, 85 (1987); *Fauconier*, 966 F.3d at 277. Because of this necessary expertise, courts "accord deference to the appropriate prison authorities." *Id.* Therefore, it must be determined if the discrimination is "reasonably related to [any] legitimate penological interests." *Veney*, 293 F.3d at 732 (quoting *Shaw v. Murphy*, 532 U.S. 223, 225 (2001)).

---

[2] Additionally, Defendant could just be referencing the fact that the Eighth Amendment applies to the States through the Due Process Clause of the Fourteenth Amendment. *Seiter*, 501 U.S. at 296. However, the Court will still address Defendants' two theories since Plaintiff is *pro se* and it is unclear exactly which Fourteenth Amendment claim he is making.

10

First, Plaintiff is not similarly situated to the trustees. Trustees are low risk inmates who are allowed to work certain jobs inside or even outside of the jail. (Defs.' Mem. Supp. at 11.) Plaintiff was not a trustee and was not working those jobs entrusted to trustees. Second, the discrimination is reasonably related to a legitimate penological interest. *Veney*, 293 F.3d at 732. It is a legitimate penological interest to have low risk inmates working in food services, common areas, outside, and any other reasonable work that inmates can provide. Additionally, because of the work they are doing, trustees are "held [to] higher standards of personal hygiene." (Williams Decl. at 2.) Trustees also may be in view of the public or working outdoors in harsh weather. (*Id.*) It is reasonable that trustees should be provided with underclothing to protect them from weather and maintain higher levels of hygiene when working in food services or outside. Thus, Plaintiff does not sufficiently allege an Equal Protection claim.

While the Court does not necessarily think Plaintiff is alleging that Defendants violated the Due Process Clause of the Fourteenth Amendment, because he is *pro se* and Defendants discussed it, the Court will address the argument.[3] The Supreme Court has said "[i]n evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law . . . the proper inquiry is whether those conditions amount to punishment of the detainee." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). To demonstrate that the restriction was actually punishment, "the pretrial detainee must show that the restriction or condition

---

[3] Defendant was a pretrial detainee during a portion of the time he was incarcerated at MPRS.

was (1) imposed with an express intent to punish or (2) not reasonably related to a legitimate nonpunitive governmental objective." *Slade v. Hampton Roads Reg'l Jail*, 407 F.3d 243, 251 (4th Cir. 2005) (quoting *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988)); *see Williamson v. Stirling*, 912 F.3d 154, 174 (4th Cir. 2018).

As discussed above, the underclothing policy was imposed to prevent contraband from being hidden. Further, both the underclothing policy and the hygiene charges for indigent prisoners were implemented to "defray the costs associated with the prisoners' keep." Va. Code Ann. § 53.1-131.3. Neither policy was imposed with the intent to punish. There were ways for prisoners to get underclothing and hygiene items and they were never prohibited from obtaining them, nor did they have items confiscated after purchasing them. In Plaintiff's case, the underclothing policy was clearly not a punishment for him because prison officials gave him underwear after he complained. Moreover, the policy was eventually changed for all inmates after Plaintiff notified Superintendent Doss of his concerns. Thus, these policies do not amount to punishment of Plaintiff as a pretrial detainee.

Consequently, there is no genuine issue of material fact as to any of Plaintiff's claims. The underclothing and hygiene policies did not violate his Eighth or Fourteenth Amendment rights. Even if they did, providing prisoners with free underclothing and hygiene items is not a clearly established right such that Defendants should not be granted qualified immunity. The Motion for Summary Judgment will be granted and Plaintiff's Complaint will be dismissed with prejudice.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
Senior United States District Judge

Date: June 8, 2022
Richmond, Virginia

13